Pat ROGER, Plaintiff–Appellant,

v.

**YELLOW FREIGHT SYSTEMS, INC., Defendant–Appellee.**

No. 93–2613.

United States Court of Appeals, Seventh Circuit.

Argued Jan. 26, 1994.

Decided March 30, 1994.

Jerry Serritella (argued), Peoria, IL, for plaintiff-appellant.

Jeffrey L. Madoff and Steven L. Brenneman (argued), Matkov, Salzman, Madoff & Gunn, Chicago, IL, for defendant-appellee.

Before ESCHBACH, RIPPLE, and MANION, Circuit Judges.

RIPPLE, Circuit Judge.

Pat Roger filed this diversity action claiming that his employer, Yellow Freight Systems, Inc. ("Yellow Freight"), discharged him in retaliation for exercising his rights under the Illinois Workers' Compensation Act ("the Act"), Ill.Rev.Stat. ch. 48, ¶¶ 138.1–138.30 (1989). The district court granted Yellow Freight's motion for summary judgment after concluding that Mr. Roger had not exercised his rights under the Act, nor established a causal connection between the alleged exercise of his rights and Yellow Freight's decision to terminate him. Because we agree that there were no genuine issues for trial, we affirm.

I

BACKGROUND

Mr. Roger was an at-will employee of Yellow Freight, a trucking company in the business of freight transportation services. Mr. Roger's job as a Safety Training Specialist consisted of touring the United States with a Safety Training Unit and presenting safety programs to various audiences. On October 31, 1990, Mr. Roger injured his back when he fell off a tractor-trailer. Kenneth Thompson, Vice–President of Linehaul Safety, told Mr. Roger to file an incident report. A claims

examiner, Juanita Ball, then handled Mr. Roger's claims for medical attention.[1] According to Mr. Roger, both Thompson and Ball were openly hostile to him after he was injured. Despite his injury, Mr. Roger continued working until June 6, 1991, when he could no longer perform his job duties because of his pain.

In November 1991, Yellow Freight requested Thompson's assistance in reducing expenses because its parent company was experiencing economic difficulties. Yellow Freight reduced its work force by 1,400 employees between 1991 and 1992. Mr. Roger's position survived this first wave of cost-cutting measures. In January 1992, however, the Safety Training Specialist position was eliminated on Thompson's recommendation. In his affidavit, Thompson attributed the decision to eliminate Mr. Roger's position to the high cost of operating and maintaining the Safety Training Unit, to the fact that the service it offered did not contribute directly to revenues and was aimed primarily at public relations, and to Yellow Freight's desire to demonstrate its cost-cutting measures to customers who were experiencing rate increases. Only one month earlier, Thompson had submitted a favorable evaluation of the Safety Training Program, urging the company to retain it. Nevertheless, Thompson's later recommendation that the program be eliminated was adopted by the company.

On January 23, 1992, over one year after Mr. Roger was injured, he was laid off. After unsuccessfully attempting to relocate Mr. Roger to another position within the company, Yellow Freight terminated him due to "lack of work" on April 9, 1992. The Safety Training Unit was sold some time in 1992. One or two months after Mr. Roger was discharged, in May or June 1992, Mr. Roger filed two workers' compensation claims, one in Illinois and one in Kansas. He also filed a complaint against Yellow Freight for retaliatory discharge. Mr. Roger acknowledged in his deposition, however, that he neither had discussed his intention to file a workers' compensation claim nor had contemplated filing one prior to his discharge. The district court granted summary judgment in favor of Yellow Freight. 849 F.Supp. 1256.

## II

## DISCUSSION

### A. *Standard of Review*

▮▮▮ This court's review of a motion for summary judgment is de novo. *Pantoja v. Holland Motor Express, Inc.*, 965 F.2d 323, 326 (7th Cir.1992). Summary judgment is appropriate when the pleadings, admissions, and affidavits show that there are no genuine issues of material fact and that the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). However, in cases in which the nonmoving party bears the burden of proof on a dispositive issue, that party also bears the burden of affirmatively demonstrating a genuine issue for trial on that issue. *Id.* at 324, 106 S.Ct. at 2553; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986). In such a situation, the nonmoving party may not rest on the allegations in the pleadings but must offer specific evidence demonstrating a factual basis on which he is entitled to relief. *Celotex Corp.*, 477 U.S. at 324, 106 S.Ct. at 2553; *Anderson*, 477 U.S. at 256, 106 S.Ct. at 2514. Summary judgment will not be defeated simply because motive or intent are involved. *Morgan v. Harris Trust & Sav. Bank*, 867 F.2d 1023, 1026 (7th Cir.1989). If a plaintiff fails to establish any motive or intent to support his position, summary judgment is appropriate. *Id.*

▮▮▮ In determining the propriety of summary judgment, this court must review the record and draw all reasonable inferenc-

---

1. The record contains no description of the job duties of a claims examiner. Nor does it identify who, other than Mr. Roger, paid his medical bills. Yellow Freight states in its brief that the company had been self-insured for workers' compensation for many years. Mr. Roger notes, on the other hand, that Yellow Freight became self-insured for workers' compensation claims and third-party claims in 1991.

es in the light most favorable to the nonmoving party. *Anderson,* 477 U.S. at 255, 106 S.Ct. at 2513–14; *Pantoja,* 965 F.2d at 326. A genuine issue for trial exists only when a reasonable jury could find for the party opposing the motion based on the record as a whole. *McEwen v. Delta Air Lines, Inc.,* 919 F.2d 58, 60 (7th Cir.1990); *Morgan,* 867 F.2d at 1026.

### B. *Analysis*

 Generally, an at-will employee may be discharged for any reason or for no reason at all. *Kelsay v. Motorola, Inc.,* 74 Ill.2d 172, 23 Ill.Dec. 559, 563–65, 384 N.E.2d 353, 357–59 (1978). However, Illinois has recognized the tort of retaliatory discharge in cases in which an employee is terminated for filing a claim under its Workers' Compensation Act. *Id.* To establish a claim of retaliatory discharge in this context, the plaintiff must prove (1) his status as an employee of the defendant before injury; (2) his exercise of a right granted by the Workers' Compensation Act; and (3) a causal relationship between his discharge and the exercise of his right. *Groark v. Thorleif Larsen & Son, Inc.,* 231 Ill.App.3d 61, 172 Ill.Dec. 799, 802, 596 N.E.2d 78, 81 (1992).

 The causality requirement calls for more than a sequential connection—the filing of a workers' compensation claim followed by termination. *Marin v. American Meat Packing Co.,* 204 Ill.App.3d 302, 149 Ill.Dec. 818, 822, 562 N.E.2d 282, 286 (1990). The plaintiff must affirmatively show that the discharge was primarily in retaliation for his exercise of a protected right. *Id.* 149 Ill.Dec. at 821, 562 N.E.2d at 285. The critical issue is the employer's motive or intent. *Id.* 149 Ill.Dec. at 824, 562 N.E.2d at 288. Because an employer can discharge an at-will employee for any reason at all, it need not provide a legitimate reason for its decision to discharge unless the employee proffers sufficient evidence from which a reasonable jury could infer that the employer was improperly motivated. *Cannella v. Nationwide Carriers, Inc.,* 687 F.Supp. 362, 365 (N.D.Ill.1988); *see also Austin v. St. Joseph Hosp.,* 187 Ill.

App.3d 891, 135 Ill.Dec. 364, 367, 543 N.E.2d 932, 935 (1989).

 Reviewing the record in the light most favorable to Mr. Roger, it is clear that the district court properly granted summary judgment for Yellow Freight because no reasonable jury could find that it discharged Mr. Roger to retaliate against him for exercising his workers' compensation rights. Although Mr. Roger alleges in his amended complaint facts regarding Yellow Freight's hostility toward him after he required medical coverage for his injury, he does not allege that Yellow Freight discharged him for those reasons. Instead, Mr. Roger states that he was discharged in retaliation for "filing a claim." Paragraphs nine and ten of the amended complaint read as follows:

9. That the discharge of the Plaintiff was in retaliation for the Plaintiff filing a workmens' compensation claim against the Defendant.

10. That under Section 4 of the Workmens' Compensation Act of the State of Illinois, it is illegal for an employer to discharge an employee for exercising his rights under the Act by filing a claim seeking relief under the Act and said Section 4 establishes a clear mandated public policy of the State of Illinois.

Mr. Roger did not file any claim until after he was discharged; therefore, he cannot establish that Yellow Freight discharged him because he filed a claim. Mr. Roger urges us to overlook this defect: He meant to claim that Yellow Freight discharged him because it anticipated his filing of a workers' compensation claim. Although his complaint was poorly drafted and included neither the relevant facts nor the proper legal basis for relief, he argues that the allegations are sufficiently related to his current claims to put the defendant on notice of the charges against it. *Hinthorn v. Roland's of Bloomington, Inc.,* 119 Ill.2d 526, 116 Ill.Dec. 694, 698, 519 N.E.2d 909, 913 (1988).

 Even construing Mr. Roger's complaint liberally, he cannot survive summary judgment because he has offered no evidence that Yellow Freight was aware of his intent to file a claim. Factual support that the employer was informed or in some way found out about the plaintiff's intent to pursue relief under the Act is essential to a retaliatory

discharge action. *Horton v. Miller Chem. Co.*, 776 F.2d 1351, 1356 (7th Cir.1985) (citing *Burgess v. Chicago Sun–Times*, 132 Ill. App.3d 181, 87 Ill.Dec. 292, 295, 476 N.E.2d 1284, 1287 (1985)), *cert. denied*, 475 U.S. 1122, 106 S.Ct. 1641, 90 L.Ed.2d 186 (1986); *Mercil v. Federal Express Corp.*, 664 F.Supp. 315, 315 (N.D.Ill.1987). Mr. Roger was injured on October 31, 1990. He was not discharged until a year and six months later. At his deposition, Mr. Roger admitted that, during that entire time, he did not inform Yellow Freight of his intention to file a claim. He further admitted that he had not even contemplated filing a claim until after he was discharged. Because Mr. Roger had no intent to file a workers' compensation claim at the time he was discharged, Yellow Freight could not have discharged him for that reason.

Nevertheless, Mr. Roger urges this court to infer from circumstantial evidence that Yellow Freight discharged him in the belief that he would file a claim. He maintains that Yellow Freight had an unspoken policy that members of management do not file workers' compensation claims and that Yellow Freight's belief that Mr. Roger was preparing to challenge its policy angered the company. The inference Mr. Roger would have us draw from these facts is unwarranted. The fact that Mr. Roger allowed an entire year and a half to pass without filing a claim would lead Yellow Freight to believe exactly the opposite—that Mr. Roger was not going to file a claim. Moreover, if it is true that Yellow Freight had such an unspoken policy and that Mr. Roger was a management employee, Yellow Freight would have had even more reason to believe that Mr. Roger would not file a claim.

■ Mr. Roger's complaint, generously construed, also alleges that Yellow Freight discharged him in retaliation for seeking medical benefits. Although such an action would be cognizable under Illinois state law. *Hinthorn*, 116 Ill.Dec. at 694, 519 N.E.2d at 909, the evidence fails to establish a genuine issue for trial. Mr. Roger first offers the

timing of the discharge as evidence of improper motivation. He contends that he was discharged the day he reported back to work. However, that evidence does not establish that Mr. Roger was discharged for seeking benefits. The decision to eliminate Mr. Roger's position was made prior to his return. Furthermore, Yellow Freight did not discharge Mr. Roger until a year and a half after he began seeking medical attention.

Second, to establish that Thompson's recommendation to eliminate the position must have been improperly motivated, Mr. Roger offers Thompson's earlier letter of October 23, 1991, which praised Mr. Roger's position and the Safety Training Program. However, the letter was clearly written before Thompson was told that he would have to recommend additional cost-cutting measures. In his affidavit, Thompson explained that Mr. Roger's position survived the first set of layoffs, which occurred in November 1991. Thereafter, he recommended the elimination of Mr. Roger's position. If anything, the letter establishes that Thompson was satisfied with Mr. Roger despite his injury.

Third, Mr. Roger submits that Yellow Freight's failure to provide him with an alternative position in the company, despite its satisfaction with his job performance, establishes that Yellow Freight was motivated to terminate him because he sought medical attention.[2] Absent a duty to offer him an alternative position, the company's failure to place him elsewhere is irrelevant to the issue whether Yellow Freight was improperly motivated in discharging him. *See Carter v. GC Elecs.*, 233 Ill.App.3d 237, 174 Ill.Dec. 465, 469, 599 N.E.2d 11, 15 (1992), *appeal denied*, 148 Ill.2d 640, 183 Ill.Dec. 16, 610 N.E.2d 1260 (1993).

Finally, Mr. Roger offers his own deposition testimony describing hostile encounters with Thompson and Ball regarding his medical bills as circumstantial evidence of Thompson's motive in discharging him. Mr. Roger claims that both Thompson and Ball accused him of feigning his injury, and that Ball told him that, if he went through with his sched-

---

**2.** Although there is a dispute as to whether Yellow Freight actually offered Mr. Roger an alternative position, we must assume Mr. Roger's version of the events to be true here for purposes of summary judgment.

uled surgery, he would never work for Yellow Freight again. However, as noted by the district court, Mr. Roger did not testify in his deposition that Thompson and Ball actually accused him of anything; he testified that he perceived Thompson's and Ball's hostility to be rooted in their belief that he was feigning his injury. Even if his perceptions were taken as evidence, they are insufficient to establish a genuine issue concerning Yellow Freight's motive in discharging him, in light of the fact that Mr. Roger was retained for a year and a half after his injury. *See Bush v. Commonwealth Edison Co.,* 990 F.2d 928, 934 (7th Cir.1993) (The inference that an employer "hatched an elaborate plot to get rid of [the employee] a year and a half after he filed his claim is too speculative to justify a rational finder of fact in concluding ... that, more likely than not, Bush would not have been fired had he not filed a workers' compensation claim."), *petition for cert. filed,* (U.S. Aug. 9, 1993) (No. 93–5574). The alleged statement by Ball that Mr. Roger would never work for Yellow Freight again also fails to establish an issue for trial because Ball played no part in the decision to eliminate Mr. Roger's position. *See Bush,* 990 F.2d at 934; *Mercil,* 664 F.Supp. at 320. Thus, the evidence offered by Mr. Roger, whether considered separately or as a whole, does not establish a causal connection between his claim for medical benefits and his discharge.

Not only is Mr. Roger's case based upon speculation, but Yellow Freight offers a legitimate nonpretextual justification for the discharge. *See Slover v. Brown,* 140 Ill.App.3d 618, 94 Ill.Dec. 856, 858, 488 N.E.2d 1103, 1105 (1986); *Lewis v. Zachary Confections Co.,* 153 Ill.App.3d 311, 106 Ill.Dec. 296, 299, 505 N.E.2d 1087, 1090 (1987), *appeal denied,* 116 Ill.2d 560, 113 Ill.Dec. 301, 515 N.E.2d 110 (1987). Yellow Freight's interest in increasing profits and cutting costs is a valid nonpretextual basis for the discharge and is clearly established by the evidence in this case. *See Groark,* 172 Ill.Dec. at 802, 596 N.E.2d at 81; *Lewis,* 106 Ill.Dec. at 299, 505 N.E.2d at 1090. In 1991, Yellow Freight's profits decreased substantially. As a result, upper level management instructed department heads to make recommendations as to potential cost-cutting measures. Between 1991 and 1992, Yellow Freight reduced its work force by 1,400 employees, four of whom were safety coordinators. That Mr. Roger's position was terminated as part of the overall effort to reduce costs is supported by the evidence. Because the Safety Training Unit was a considerable cost to the company, $102,396.59 per year, and because its primary purpose was to develop public relations, Thompson recommended that the entire program be abandoned. Yellow Freight adopted Thompson's recommendation.

Mr. Roger offers no evidence that a reduction in force did not take place. *See Aungst v. Westinghouse Elec. Corp.,* 937 F.2d 1216, 1223 (7th Cir.1991) (requiring a plaintiff to provide specific evidence of pretext in reduction-in-force cases). His claim that Yellow Freight submitted inaccurate data regarding the reduction of its work force is without merit. Yellow Freight provided the number of people it employed as of December 1991 and 1992. Its data did not, as Mr. Roger suggests, consist of the number of employees who came to work on a particular day in each of those years. In addition, Mr. Roger offers no support for his claim that a reduction of 4.67% of the work force does not constitute a legitimate reduction in force. Nor does he offer support for his claim that, to establish a genuine reduction in force, a company must demonstrate that it had a "plan." Finally, Mr. Roger's argument that a reduction in force was not necessary under the circumstances is not one this court will entertain. *See Smith v. General Scanning,* 876 F.2d 1315, 1321 (7th Cir.1989). As we stated in *Mechnig v. Sears, Roebuck & Co.,* we do "not sit as a super-personnel department that reexamines an entity's business decisions." 864 F.2d 1359, 1365 (7th Cir.1988) (citing *Dale v. Chicago Tribune Co.,* 797 F.2d 458, 464 (7th Cir.1986), *cert. denied,* 479 U.S. 1066, 107 S.Ct. 954, 93 L.Ed.2d 1002 (1987)). "No matter how medieval a firm's practices, no matter how high-handed its decisional process, no matter how mistaken the firm's managers, [the prohibition against retaliatory discharge does] not interfere." *Pollard v. Rea Magnet Wire Co.,* 824 F.2d 557, 560 (7th

Cir.); *cert. denied,* 484 U.S. 977, 108 S.Ct. 488, 98 L.Ed.2d 486 (1987).

### Conclusion

The evidence, when viewed in the light most favorable to Mr. Roger, presents no genuine issue of triable fact. Summary judgment was proper in this case.

AFFIRMED.