Thomas GRAHAM, Jr., Plaintiff,

v.

AURORA POLICE DEPARTMENT, City of Aurora, a municipal corporation, Defendant.

No. 98 C 1228.

United States District Court, N.D. Illinois, Eastern Division.

March 29, 2001.

Edna Selan Epstein, Law Offices of Edna Selan Epstein, Herbert H. Victor, David Grayson Duggan, Attorney at Law, Chicago, IL, for plaintiff.

Deborah Ann Kop, Seyfarth Shaw, Chicago, IL, Patricia Witkowski Supergan, City of Aurora, Department of Law, Aurora, IL, for defendant.

### MEMORANDUM OPINION AND ORDER

ANDERSEN, Judge.

This case is before the Court on the motion of the defendant, the City of Aurora ("Aurora"), for summary judgment pursuant to Fed.R.Civ.P. 56. For the following reasons, we grant the motion for summary judgment.

### BACKGROUND

Plaintiff worked as a police officer for the Aurora Police Department from June 10, 1996 until December 20, 1996. On December 20, 1996, he was placed on administrative leave with pay pending his discharge. Plaintiff was discharged on February 26, 1997.

Defendant argues that plaintiff was discharged because he failed to meet the objective, clear-cut standards of performance required by the Aurora Police Department and its Officer Field Training Program. The Field Training Program is designed to assist Police Academy graduates in making the transition from the classroom environment to the application of learned skills in field situations. In the Field Training Program, a recruit officer must earn acceptable ratings in all areas of evaluation in order to earn a final release into the solo patrol unit. Areas of evaluation include written communication, field performance, self-initiated field activity, officer safety, situation control, criminal law and ordinances, and Department policy and procedure. Recruit officers receive daily, weekly, and monthly evaluations with verbal feedback as to their performance in the Field Training Program.

The undisputed evidence shows that plaintiff had performance problems from the beginning of his field training.[1] Plaintiff was consistently rated below acceptable by a total of ten different Field Training Officers and Field Training Sergeants in six out of ten rated categories. His written reports lacked vital information and contained errors. He failed to demonstrate an understanding of the elements of criminal offenses, jeopardized officer safety, and failed to follow Department policy and procedure. Plaintiff's Field Training Officers and Field Training Sergeant reviewed these areas with plaintiff when they provided him with his daily, weekly and monthly evaluation reports. They placed him on a performance improvement plan. In addition, plaintiff received two formal extensions in Step Three of the Second Phase of the Field Training Program to give him opportunities to receive additional training and field experience so that, hopefully, he would improve to a level of acceptable performance in all areas of evaluation. However, despite receiving repeated feedback and two extensions in Step Three, plaintiff failed to correct the deficiencies in his performance. Indeed, plaintiff failed to achieve acceptable ratings across all ten categories of evaluation in any of his Step Three monthly evaluations, which he was required to do to earn a first release into the solo patrol unit.

In the complaint, plaintiff alleges that he was subjected to different terms and conditions of employment and ultimately discharged because of his race. Count I of the complaint alleges a cause of action under Title VII of the Civil Rights Act of 1964 for racial discrimination. Count II alleges a cause of action for retaliation under Title VII. Plaintiff claims that in June, 1994, he filed a charge of discrimination against the defendant for failure to hire him as a police officer. As a result of an alleged settlement negotiated by the Illinois Department of Human Rights, plaintiff claims that he was permitted to reapply for a position with the defendant on February 8, 1996. Plaintiff further alleges that he was subjected to different terms and conditions of employment than employees who had not complained about discrimination and that he was discharged from his employment in retaliation for his having engaged in activity protected under 42 U.S.C. § 2000e–3(a).

## DISCUSSION

Summary judgment will be granted when "the pleadings, depositions, answers

---

1. Plaintiff disputes only five out of 72 of defendant's undisputed material facts in support of his motion for summary judgment. By failing to dispute any of defendant's facts with specific record evidence as required by Local Rule 56.1(b)(3)(B), plaintiff admits all of defendant's facts. *See, e.g., Malabarba v. Chicago Tribune Co.,* 149 F.3d 690, 693 (7th Cir. 1998).

to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The Court will not render summary judgment if a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The mere possibility of a factual dispute is not enough to defeat a summary judgment motion. *Id.* at 250, 106 S.Ct. 2505; *Waldridge v. American Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994).

### I. *Plaintiff Has No Evidence That He Was Discharged Because Of His Race*

To prove discrimination using the indirect, burden-shifting method outlined by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), the legal principles are well-settled, as the Seventh Circuit recently confirmed:

First, plaintiff must first make out a *prima facie* case of discrimination. *McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. 1817. Where a plaintiff alleges discriminatory treatment, he must demonstrate that (1) he belongs to a protected class; (2) he performed his job satisfactorily; (3) he suffered an adverse employment action; and (4) his employer treated similarly-situated employees outside of his protected class more favorably. *Plair v. E.J. Brach & Sons, Inc.*, 105 F.3d 343, 347 (7th Cir. 1997); *Lenoir v. Roll Coater, Inc.*, 13 F.3d 1130, 1132 (7th Cir.1994). Once a plaintiff has made this showing, there is a presumption that he was discriminated against, and the employer must come forward with a legitimate, non-discriminatory reason for the employment action. *McDonnell Douglas*, 411 U.S.

at 802, 93 S.Ct. 1817; *Lenoir*, 13 F.3d at 1133. At this stage, the employer need not prove that it was actually motivated by the proffered reason. Rather, an employer "need only produce admissible evidence which would allow the trier of fact rationally to conclude that the employment decision had not been motivated by discriminatory animus." *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 257, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). Once the defendant meets this burden of production, the plaintiff must prove by a preponderance of the evidence that the reason offered by the defendant is merely a pretext for discrimination. *Burdine*, 450 U.S. at 253, 101 S.Ct. 1089; *Plair*, 105 F.3d at 348.

*Stockett v. Muncie Indiana Transit Sys.*, 221 F.3d 997, 1000–01 (7th Cir.2000). In *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000), the Supreme Court recently confirmed that, under the *McDonnell Douglas* framework, "the ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff *remains at all times with the plaintiff.*" *Id.* at 2106.

### A. *Plaintiff Cannot Establish A Prima Facie Case of Race Discrimination*

First, plaintiff's discrimination claim fails because he cannot make out even a prima facie case of discrimination. As the Seventh Circuit has noted, "it is axiomatic that there can be no genuine issues of material fact if the plaintiff is unable to establish a prima facie case." *Hong v. Children's Memorial Hosp.*, 993 F.2d 1257, 1262 (7th Cir.1993).

In this case, plaintiff cannot show that he was performing his job satisfactorily. Plaintiff simply did not meet defendant's performance expectations. His written reports were inadequate, he failed to grasp

the elements of criminal laws and ordinances, and he failed to follow Department policy and procedure. Moreover, despite receiving feedback in the form of Daily Observation Reports, Weekly Performance Summary Reports and Monthly Observation Reports and two month-long formal extensions in Step Three of the Field Training Program, plaintiff failed to correct the deficiencies in his performance. Indeed, plaintiff failed to achieve acceptable ratings across all ten categories of evaluation in any of his Step Three Monthly Observation Reports. Because plaintiff did not perform his job satisfactorily, plaintiff fails to meet one of the essential elements of his claim of race discrimination.

Plaintiff attempts to establish that he was meeting defendant's legitimate expectations by cherry-picking one weekly evaluation in which report writing was the only area rated below acceptable and then asserting that report writing was his only area of deficiency. However, there is no genuine dispute that, during the four months plaintiff spent in Step Three, plaintiff received ratings below acceptable in 9 out of 10 categories. Moreover, there is no dispute that, in order to obtain a first release, plaintiff was required to earn acceptable ratings in all ten rated areas of performance, and he did not. Therefore, it is undisputed that plaintiff was not performing his job satisfactorily, and he has failed to make out a prima facie case of discrimination under the *McDonnell Douglas* test.

██ In addition, plaintiff has not met the fourth prong of his prima facie case because he has not demonstrated that similarly situated employees outside of his protected class were treated more favorably. The record is devoid of any evidence that any employees who are not African–American and who performed at the same level as plaintiff were released from the Field Training Program into the solo patrol unit. Indeed, not a single officer in plaintiff's class of seven recruits was released from the Field Training Program into a solo patrol position unless the officer's overall monthly performance was rated acceptable-a level plaintiff never attained during his training. Therefore, plaintiff's prima facie case fails on this basis as well.

B. *Plaintiff Has No Evidence That Defendant's Legitimate, Non–Discriminatory Reason for Terminating His Employment Was A Pretext For Race Discrimination*

██ Even if plaintiff could make out a prima facie case of discrimination, this case would still warrant summary judgment because defendant has articulated a non-discriminatory reason for discharging plaintiff. An employer meets this burden by submitting any lawful justification for the termination in question. *Silk v. City of Chicago*, 194 F.3d 788, 799 (7th Cir. 1999).

Here, defendant's stated reason for discharging plaintiff-that he failed to satisfy the Field Training Program's objective performance requirements-is unquestionably legitimate and non-discriminatory. Accordingly, defendant has met its burden of articulating a valid reason for plaintiff's discharge, especially in light of the fact that plaintiff had ample opportunity to improve his performance. Indeed, plaintiff received daily, weekly and monthly evaluations, his Field Training Officers instituted performance improvement plans for him, he received two month-long formal extensions in Step Three, and he met with officers ranging from his Field Training Officers all the way up to the Chief of Police, to discuss his performance.

██ Plaintiff's last hope for defeating summary judgment is to show that defen-

dant's proffered reason for his discharge is a pretext for discrimination—in other words, a lie. *Green v. National Steel Corp.*, 197 F.3d 894, 899 (7th Cir.1999). A plaintiff shoulders a heavy burden in this regard. *Dale v. Chicago Tribune Co.*, 797 F.2d 458, 464–65 (7th Cir.1986).

■ In this case, there is no evidence of pretext. Plaintiff concedes that he read and signed each Daily Observation Report, Weekly Performance Summary Report and Monthly Observation Report and that he met with his Field Training Officers and/or Field Training Sergeant to discuss each such evaluation. Moreover, it is undisputed that Sergeant Piercall, Sergeant Fuller, Lieutenant DoBran and Chief Langston all met with plaintiff to discuss plaintiff's performance problems and to ask if there was anything they could do to assist him.

■ While plaintiff may not agree with all of the specific evaluations of his performance, this Court is not in a position to sit as a super-personnel department to reexamine or second guess personnel decisions or policies that are facially legitimate. *Foster*, 168 F.3d at 1035; *Robin*, 200 F.3d at 190. The Seventh Circuit "has long championed an employer's right to make its own business decisions, even if they are wrong or bad." *Green*, 197 F.3d at 899.

■ Plaintiff attempts to create an issue of fact by presenting his affidavit wherein he avers for the first time that Field Officer Deuchler told him that he would be graded more harshly than other Rookies because of his race and because of the way the Department was forced to hire him. First, it is well-settled that a party cannot defeat summary judgment by submitting an affidavit that contradicts his own deposition testimony. *See Patterson v. Chicago Ass'n for Retarded Citizens*, 150 F.3d 719, 724 (7th Cir.1998).

Moreover, Deuchler's alleged statement does not create a genuine issue of material fact as to the legitimacy of defendant's reason for discharging plaintiff-his admitted failure to satisfy the Field Training Program's performance requirements. Nor does it constitute direct evidence of discrimination. Indeed, plaintiff offers no evidence that Police Chief Larry Langston, who requested plaintiff's discharge and placed plaintiff on administrative leave pending his discharge, consulted Deuchler in making his decision or was even aware of the alleged Deuchler statement when he made the decision. *See Cianci v. Pettibone Corp.*, 152 F.3d 723, 727 (7th Cir. 1998). In fact, plaintiff admitted in his deposition that he did not talk to any of the Department's Sergeants, Lieutenants or Chief Langston about the alleged statement made by Deuchler.

Deuchler was merely the last of a long line of Field Training Officers and Field Training Sergeants to have consistently identified substantial problems with plaintiff's performance in a multitude of categories and the fourth consecutive Field Training Officer to recommend that plaintiff not receive his first release. Plaintiff has produced no evidence that any of these other officers were motivated by anything other than a genuine concern for plaintiff's performance. In fact Deuchler's evaluations were consistent with those of the other officers who evaluated plaintiff. Out of the 16 weeks plaintiff spent in Step Three, he was rated as "not progressing acceptably in the [Field Training] Program" for 14 of those weeks. In the four monthly evaluations plaintiff received in Step Three, he was never rated acceptable in all ten rated areas of performance, as was required to earn a first release.

■ Plaintiff likewise cannot show pretext merely by comparing Field Training Officer Hinterlong's week 21 evaluation,

which rated plaintiff acceptable in nine out of ten categories, with Deuchler's week 22 evaluation, which rated him acceptable in one of ten categories. Hinterlong, in fact, rated plaintiff acceptable in only two categories during week 18, one category during week 19, and six categories during week 20. Moreover, he rated plaintiff as "not responding to training" on five occasions in week 18, five occasions in week 19, two occasions in week 20 and one occasion in week 21. Hinterlong rated plaintiff below acceptable in eight out of ten categories in plaintiff's monthly evaluation, and did not recommend plaintiff for a first release, stating: "Graham still needs to continue his report writing [performance improvement plan] with practice reports and also continue to review criminal laws." These evaluations were consistent with Deuchler's.

In this case, regardless whether plaintiff agrees with the requirements of defendant's Field Training Program or his performance evaluations pursuant thereto, he has offered no evidence that his discharge was based on anything other than his unsatisfactory performance under that Program. Thus, whether this Court analyzes plaintiff's performance problems under the second element of the prima facie case or under the pretext prong, the result is the same-as a matter of law, there is no evidence that race was a motivating factor in plaintiff's discharge. As a result, summary judgment in favor of the defendant on plaintiff's claim of race discrimination is granted.

II. *Plaintiff Cannot Establish That His Discharge Was In Retaliation For His Filing A Charge Of Discrimination With The Illinois Department Of Human Rights*

 To establish a prima facie case of retaliation, plaintiff must prove: 1) that he engaged in statutorily protected activity;

2) that he suffered an adverse action; and 3) that there is a causal connection between the protected activity and the adverse action. *Maarouf v. Walker Mfg. Co.*, 210 F.3d 750, 755 (7th Cir.2000). Plaintiff cannot meet this burden because he cannot establish the third element of his prima facie case. Further, even if plaintiff could make out a prima facie case of unlawful retaliation, he has no evidence that defendant's reason for his discharge was a pretext for retaliation.

A. *Plaintiff Cannot Establish A Prima Facie Case Of Retaliation Because No Facts Link His Discharge With His Protected Activity*

 In this case, plaintiff's discharge occurred approximately three years after he filed a discrimination charge with the Illinois Department of Human Rights against the Aurora Civil Service Commission for the City's failure to hire him as a police officer in 1994. In fact, plaintiff concedes that he has no evidence which links his 1994 charge of discrimination with his February 26, 1997 termination. Plaintiff admitted in his deposition that, while he worked for defendant, he did not believe anyone in the Police Department knew about his prior charge of discrimination. This leaves plaintiff with the rather odd contention that, two years after he filed his charge of discrimination, defendant hired him, placed him in the Field Training Program, granted him two formal extensions of his Step Three training, and then, after 26 weeks, discharged him in retaliation for the 1994 charge. These facts, along with plaintiff's deposition testimony that he did not believe that anyone in the Department was aware of his 1994 charge, are insufficient to establish a causal nexus between plaintiff's protected activity and his discharge. "As the temporal

distance between protected expression and the adverse action increase[s], it is less likely that there is a causal link between the two events." *McClendon v. Indiana Sugars, Inc.*, 108 F.3d 789, 797 (7th Cir. 1997). Further, a substantial time lapse between the protected activity and the adverse employment action "is counter-evidence of any causal connection." *Filipovic v. K & R Exp. Systems, Inc.*, 176 F.3d 390, 393 (7th Cir.1999).

■ Moreover, "[t]he causality requirement calls for more than a sequential connection...." *Roger v. Yellow Freight Systems, Inc.*, 21 F.3d 146, 149 (7th Cir. 1994). Rather, plaintiff must establish that defendant possessed the requisite state of mind-i.e., intentional retaliation that occurs because of plaintiff's protected activity. *Id.* at 149. Here, not only is there no sequential connection between plaintiff's protected activity and his discharge, but plaintiff also has admitted that he has no evidence that defendant harbored a retaliatory motive in discharging him. Because there is no nexus between plaintiff's 1994 charge of discrimination and his 1997 discharge, his prima facie case fails as a matter of law. *See Maarouf,* 210 F.3d at 756.

B. *Plaintiff Cannot Establish That Defendant's Legitimate Non–Discriminatory Reason For His Discharge Was A Pretext For Retaliation*

■ Even if plaintiff could pass the hurdle of the prima facie retaliation case, his claim still must fail because there is no evidence that defendant's articulated reason for terminating his employment was a pretext for retaliation. Evidence of poor performance overcomes a claim that an employment action is retaliatory. Plaintiff cannot dispute that his performance was consistently rated as below the acceptable level. Thus, defendant's reasons for plaintiff's discharge constitute a legitimate business justification. Unless plaintiff can establish that defendant's reasons are a pretext for retaliation, his claim must fail.

To establish an inference of pretext, plaintiff must demonstrate that defendant's reason for not releasing him from the Field Training Program and discharging him is a lie. *See Green,* 197 F.3d at 899. In light of plaintiff's poor performance, his consistent verbal and written feedback and two formal extensions in Step Three, such an inference is not possible. Plaintiff simply has no evidence that defendant's reason for not releasing him from the Field Training Program and discharging him due to his poor job performance is a lie. Therefore, plaintiff's retaliation claim fails as a matter of law and judgment is granted in favor of the defendant on that claim.

## CONCLUSION

For the foregoing reasons, we grant the motion of defendant City of Aurora for summary judgment pursuant to Fed. R.Civ.P. 56. Judgment is entered in favor of the defendant and this case is hereby terminated. This is a final and appealable order.