**In re COST REDUCTION SERVICES, INC., Debtor,**

**Charles E. Covey, Trustee, Plaintiff,**

**v.**

**American Investment Services and Terry Stuff, Defendants.**

**Bankruptcy No. 99–83804.**
**Adversary No. 00–8015.**

United States Bankruptcy Court, C.D. Illinois.

Aug. 26, 2002.

434

Thomas W. O'Neal, Peoria, Illinois, Jeffery A. Deller, Pittsburg, PA, for plaintiff.

Jerry W. Kinnan, American Investment Services, Inc., East Peoria, Illinois, Mark Skaggs, Peoria, Illinois, for defendants.

## *OPINION*

WILLIAM V. ALTENBERGER, Bankruptcy Judge.

The Debtor, Cost Reduction Services, Inc., ("DEBTOR") filed a Chapter 11 bankruptcy petition on November 11, 1999. On January 27, 2000, this adversary proceeding was filed by MCI WorldCom, Inc. and WorldCom Technologies, Inc. (jointly hereinafter referred to as "WORLDCOM"), the largest creditor of the DEBTOR, against the Defendants, Terry Stuff ("STUFF") and American Investment Services ("AIS"). The facts alleged in the Complaint are as follows. STUFF was the sole shareholder and officer of the DEBTOR. On October 2, 1998, STUFF opened a trading account in his name with AIS for the purpose of buying and selling stocks

("STUFF ACCOUNT"). The DEBTOR transferred money to the STUFF AC-COUNT, which STUFF used to execute personal stock transactions.[1] Without identifying a specific provision of the Bankruptcy Code, WORLDCOM alleged both actual fraud and constructive fraud, and alleged that AIS was a mediate or immediate transferee. WORLDCOM sought an order avoiding the transfers from the DEBTOR to STUFF, and entry of a judgment in the DEBTOR'S favor against STUFF in the amount of $476,000.00, as well as an order requiring AIS to liquidate the account and turnover the proceeds to the DEBTOR. STUFF continued to trade on the STUFF AC-COUNT until approximately February 17, 2000, when the United States District Court issued a Temporary Restraining Order to both STUFF and AIS directing that the STUFF ACCOUNT be liquidated.[2] Pursuant to this order, the STUFF AC-COUNT was liquidated on or about February 17, 2000.

The parties filed a joint pretrial statement on May 22, 2000. WORLDCOM pinpointed its theories of recovery against STUFF under § 544, § 548, and § 549, merely asserting that AIS was a transferee and seeking recovery against AIS under § 550 for the avoided transfers. AIS con-

tended that the transfers were not fraudulent and denied its status as a transferee. Disputing the amount of the alleged transfers and contending that the funds constituted a loan by the DEBTOR, STUFF maintained that he intended to repay the funds to the DEBTOR. On September 21, 2000, WORLDCOM filed a motion for partial summary judgment against STUFF, acknowledging the return of $308,574.05 to the DEBTOR'S estate, and seeking judgment in the amount of $237,054.81. Although the parties represented at the hearing on the motion that an agreed judgment would be submitted, they were unable to agree to its form. Before the matter was rescheduled for hearing, STUFF filed a Chapter 7 petition on Dec. 6, 2000, staying all further proceedings against him.

When the DEBTOR'S case was converted to Chapter 7 on November 15, 2000, the Trustee, Charles E. Covey ("TRUSTEE") was substituted for WORLDCOM as Plaintiff and pursued the action against AIS, seeking to recover STUFF'S trading losses in the amount of $267,558.90, for the benefit of the DEBTOR'S estate. Both the TRUSTEE and AIS filed motions for summary judgment. A hearing was held on May 15, 2002, and the Court took the matter under advisement.[3]

1. There does appear to be some confusion whether the DEBTOR'S funds were always deposited directly into the STUFF ACCOUNT with AIS or if the money was given to STUFF who then deposited the money in the STUFF ACCOUNT. On the record before the Court, it appears the funds were most often transferred directly to the STUFF ACCOUNT via the DEBTOR'S bank account or through a cashier's check issued by the DEBTOR'S bank. However, any distinction is moot because the STUFF ACCOUNT was non-discretionary as to AIS, leaving STUFF with total control over the disbursement of the funds under either possibility. Hypothetically, STUFF could have simply left the funds in the STUFF ACCOUNT, so any stock transaction

initiated by STUFF must be considered a separate transfer apart from the initial deposit of funds into the STUFF ACCOUNT by the DEBTOR.

2. The order was entered by the district court due to the temporary unavailability of a bankruptcy judge.

3. AIS indicated there was also a second joint account opened on approximately February 22, 1999, in the names of Imogene Rickey and STUFF ("Rickey/Stuff Account"), which was in existence during much of the period in question. From the TRUSTEE'S motion, it appears that only the stocks traded on the STUFF ACCOUNT are currently at issue.

The well-known summary judgment standard applicable in this case states that summary judgment will be granted "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Bankruptcy Rule 7056, incorporating Fed.R.Civ.P. 56(c). When deciding a motion for summary judgment, the court must decide whether there is any material dispute of fact requiring a trial, considering all evidence in the light most favorable to the non-moving party. *Roger v. Yellow Freight Systems, Inc.*, 21 F.3d 146, 148–49 (7th Cir.1994). The moving party bears the burden of proof that no issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). If this burden is met, the non-moving party must establish that there is a genuine issue of material fact, requiring a trial to resolve these issues. *Id.* Each motion must be separately considered and the pendency of cross motions for summary judgment does not require that one of the motions be granted. *In re First Commercial Management Group, Inc.*, 279 B.R. 230 (Bankr.N.D.Ill.2002).

The TRUSTEE has moved for summary judgment, contending that the transfers are avoidable under §§ 160/5(a)(1), 5(a)(2) and 6(a) of the Illinois Fraudulent Transfers Act, 740 ILCS §§ 160/5(a)(1), 5(a)(2) and 6(a), pursuant to § 544(b)(1) of the Bankruptcy Code, 11 U.S.C. § 544(b)(1), and that the transfer is recoverable from

AIS as an initial transferee.[4] AIS has filed a cross motion for summary judgment, disputing the TRUSTEE'S contention that the transfers were fraudulent as to STUFF and its status as a transferee under § 550.

As a general rule, it is only after a transfer is determined to be avoided under one of the avoiding powers provisions, that the trustee turns to § 550 to determine to whom he may look for recovery of the property. In this case, the first step of this analysis is omitted as the determinative issue is whether the TRUSTEE can recover the transfer from AIS.

Section 550 of the Bankruptcy Code, 11 U.S.C. § 550, which authorizes the trustee to recover transferred property, provides, in pertinent part:

(a) Except as otherwise provided in this section, to the extent that a transfer is avoided under section 544 ... of this title, the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property from—

(1) the initial transferee of such transfer or the entity for whose benefit such transfer was made; or

(2) any immediate or mediate transferee of such initial transferee

(b) The trustee may not recover under section (a)(2) of this section from—

(1) a transferee that takes for value, including satisfaction or securing of a present or antecedent debt, in good faith, and without knowledge of the voidability of the transfer avoided; or

---

The TRUSTEE does not challenge any transactions made on the Rickey/Stuff Account, and, as a result, this account receives no further attention from this Court.

**4.** Section 544(b)(1) of the Bankruptcy Code provides:

Except as provided in paragraph (2), the trustee may avoid any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is voidable under applicable law by a creditor holding an unsecured claim that is allowable under section 502 of this title or that is not allowable only under section 502(e) of this title.

(2) any immediate or mediate good faith transferee of such transferee.

In other words, for the TRUSTEE to recover from AIS, AIS must be the "initial transferee," the "entity for whose benefit the transfer was made," or the "immediate or mediate transferee of such initial transferee." While the TRUSTEE only alleges AIS was an immediate or mediate transferee in its initial complaint, the TRUSTEE, in support of his summary judgment motion, additionally alleges AIS was an initial transferee. This Opinion addresses all three possibilities.

■ This Court first addresses the question of whether AIS was the "initial transferee." The Seventh Circuit Court of Appeals addressed a similar issue in *Bonded Financial Services, Inc. v. European American Bank*, 838 F.2d 890 (7th Cir. 1988), a case setting controlling precedent for this Court. In *Bonded*, the court concluded that to be considered an "initial transferee" the transferee had to receive a benefit, going on to define "transferee" as necessitating a minimum requirement of a "dominion over the money or other asset [of the debtor], the right to put the money to one's own purposes." 838 F.2d at 893. In the context of the transfers from the DEBTOR to the STUFF ACCOUNT, STUFF exercised absolute dominion or control over the money in the STUFF ACCOUNT, not AIS. STUFF could spend, or not spend, the money as he saw fit. STUFF could execute stock transactions or do nothing. Because the STUFF ACCOUNT was non-discretionary as to AIS, AIS had no say as to what STUFF could or could not do with the money. As a result, under *Bonded*, AIS cannot be considered an "initial transferee."

■ Next, the Court addresses the question of whether the TRUSTEE can recover from AIS as the "entity for whose benefit such transfer was made." To be successful, the TRUSTEE would have to prove that the DEBTOR made the transfer to the STUFF ACCOUNT with the intention that STUFF use the money to invest in stocks with AIS from which AIS received certain fees and/or commissions or satisfaction of outstanding debts. Addressing this issue, the court in *Bonded* stated that "the paradigm 'entity for whose benefit such transfer was made' is a guarantor or debtor—someone who receives the benefit but not the money." 838 F.2d at 895. The court in *Bonded* went on to expressly hold, "[s]omeone who receives the money later on is not an 'entity for whose benefit such transfer was made'; *only a person who receives a benefit from the initial transfer is within this language.*" *Id.* at 896. (Emphasis added). Even assuming without deciding that the DEBTOR "intended" AIS to benefit from the transfer to the STUFF ACCOUNT, AIS clearly did not receive a benefit from the transfer by the DEBTOR to STUFF'S non-discretionary account, as STUFF was free to spend the money as he saw fit. Therefore, AIS cannot be considered an "entity for whose benefit such transfer was made" because until STUFF elected to buy or sell stock or pay off existing debts, AIS received nothing.

■ Finally, the Court must determine whether AIS can be held liable under § 550(a)(2) as an "immediate or mediate transferee."[5] Even if AIS is an immediate or mediate transferee, AIS would not

---

**5.** AIS disputes whether it ever had "dominion over the money or the right to put the money to their own purposes" to bring it within the definition of a "transferee," contending it was merely a "financial conduit." For the pur-

pose of ruling on AIS' summary judgment motion, all questions of fact are assumed in favor of the non-moving party. Therefore, AIS is assumed to meet the definition of a "transferee."

be found liable if it gave value, in good faith, and without knowledge of the voidability of the transfers. As the court in *Bonded* points out, "the statute does not say 'value to the debtor'; it says 'value.'" 838 F.2d at 897. Worded as such, the statute is clearly designed to protect good faith purchasers. *See, Id.* Undisputably, AIS provided value to STUFF in the form of stock or the forgiveness of antecedent debt, meeting the first prong of § 550(b)(1).

The remaining question is whether the transfer to the STUFF ACCOUNT was "in good faith, and without knowledge of the voidability of the transfer avoided." Similarly to the facts in *Bonded*, the TRUSTEE in the instant case does not say that AIS acted in bad faith, nor does the TRUSTEE allege that this transaction satisfies the test suggested by the legislative history of § 550(b)(1):

> The phrase "good faith" in [§ 550(b)] is intended to prevent a transferee from whom the trustee could recover from transferring the recoverable property to an innocent transferee, and receiving a transfer from him, that is, "washing" the transaction through an innocent third party. In order for the transferee to be excepted from liability ... he himself must be a good faith transferee. 838 F.2d at 897.

■ Instead, the TRUSTEE contends AIS "should have known" that the transfer of money from the DEBTOR to STUFF was fraudulent and that STUFF was improperly using the DEBTOR'S assets to trade for his personal account. However, as the court in *Bonded* noted:

> Some facts strongly suggest the presence of others; a recipient that closes its eyes to the remaining facts may not deny knowledge. *See Bosco v. Serhant*, 836 F.2d 271, 276–78 (7th Cir.1987). But this is not the same as a duty to

investigate, to be a monitor for creditor's benefit when nothing known so far suggests that there is a fraudulent conveyance in the chain. "Knowledge" is a stronger term than "notice", *see Smith v. Mixon*, 788 F.2d at 232. A transferee that lacks the information necessary to support a inference of knowledge need not start investigating on his own. 838 F.2d at 898.

The TRUSTEE has not alleged any facts giving rise to an inference of knowledge on the part of AIS. Therefore, this Court concludes that transfers to AIS were in good faith and without knowledge of the voidability of the transfer.

In sum, while there may have been a fraudulent conveyance from the DEBTOR to the STUFF ACCOUNT, the TRUSTEE is unable to establish AIS was an "initial transferee" or the "entity for whose benefit the transfer was made" as a result of this presumed fraudulent transfer. Viewing the facts in the best possible light for the TRUSTEE, AIS may have become an "immediate or mediate transferee of such initial transferee," but only after STUFF elected to engage in a stock transaction or use the money to pay antecedent debts. Even in this instance, however, AIS can clearly claim the defense of a good faith purchaser for value under § 550(b)(1).

Finally, because the TRUSTEE is unable to recover from AIS as an "initial transferee," "an entity for whose benefit the transfer was made," or as the "immediate or mediate transferee," the TRUSTEE argues alternatively that there was only one transfer under a theory that the DEBTOR and STUFF were alter-egos of one another. In this scenario, the TRUSTEE argues that only one fraudulent transfer took place from the DEBTOR/STUFF directly to AIS. However, the TRUSTEE cannot recover under this al-

ternative either, as such a transfer cannot be fraudulent because AIS would have provided the DEBTOR/STUFF with stock of equivalent value.

For the foregoing reasons, the TRUST-EE could not prove any fact which would allow recovery from AIS. Therefore, the TRUSTEE'S motion is denied in its entirety and the motion for summary judgment filed by AIS is granted.

This Opinion constitutes this Court's findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052.

See written Order.