In the

# United States Court of Appeals

## For the Seventh Circuit

No. 11-2890

MARION GORDON,

*Plaintiff-Appellant,*

*v.*

FEDEX FREIGHT, INC.,

*Defendant-Appellee.*

Appeal from the United States District Court
for the Central District of Illinois.
No. 09-4065—**Joe Billy McDade**, *Judge.*

ARGUED JANUARY 9, 2012—DECIDED MARCH 22, 2012

Before FLAUM and KANNE, *Circuit Judges*, and
CHANG, *District Judge.*[*]

KANNE, *Circuit Judge.* Marion Gordon suffered an on-the-job injury at one of FedEx's service centers on October 14, 2008. The following day, two FedEx managers made the decision to terminate Gordon's position as part

[*] The Honorable Edmond E. Chang, United States District Court for the Northern District of Illinois, sitting by designation.

of a national reduction in force. Gordon was informed of this decision upon her return from medical leave on November 11, 2008. Following her termination, Gordon filed a workers' compensation claim on December 15, 2008. In July 2009, Gordon sued FedEx for terminating her in retaliation for exercising her workers' compensation rights. Finding no genuine issue of material fact, the district court granted summary judgment in favor of FedEx. We affirm.

## I. BACKGROUND

Gordon worked as an Over, Short, and Damaged ("OS&D") clerk at FedEx's East Moline, Illinois, service center from September 4, 2006, through her termination on November 11, 2008. On October 14, 2008, Gordon tripped and fell at the facility, injuring her wrist. She reported her injury to FedEx regional manager, Jeff First. A FedEx employee transported Gordon to the hospital, where hospital staff diagnosed Gordon's injury as a "bruise" and discharged her with her arm in a sling. Jeff Mallonee, manager of the East Moline facility, picked Gordon up from the hospital to take her back to the service center. According to Gordon's deposition testimony, Mallonee told her "you're going to be off for a long time." Although Gordon agreed that she probably would not be at work the next day, she told Mallonee that she doubted she would be off a long time. That same day, Mallonee directed Carolyn McDaniel, an operations supervisor, to complete an accident report on Gordon's injury.

The following morning, Gordon called Mallonee at the service center and informed him she would be seeking additional treatment from her family doctor because her wrist was not improving. That afternoon, Mallonee met with First and FedEx managing director, Butch Davis, to discuss downsizing at the East Moline center. At the time, FedEx was implementing a nationwide reduction in force which resulted in the elimination of multiple positions across the country. Davis directed First and Mallonee to develop a plan for eliminating one full-time position in East Moline.

Three employees worked full-time at the East Moline service center: two operations supervisors (McDaniel and Jason Clark) and one OS&D clerk (Gordon). Mallonee served as the service center manager at both the East Moline and Bloomington facilities, which are approximately 120 miles apart. First and Mallonee decided it was necessary to have two other supervisors at the East Moline facility, which was open from 4:00 a.m. to 10:00 p.m., on days when Mallonee was absent. "[W]e wanted to have a supervisor on site to open the facility in the morning and to close the facility at night and, due to the long hours the facility was open, one supervisor could not perform both these tasks." (First Decl. at 2.) First and Mallonee believed McDaniel, who had previously performed OS&D duties, could carry out Gordon's duties in conjunction with her supervisory responsibilities. Accordingly, First and Mallonee determined that the OS&D clerk position was the most appropriate position for elimination because this move would preserve the number of supervisors at the facility.

Shortly after her injury, Gordon's family doctor determined that her wrist was broken in two or three places and required surgery. Thus, the decision to eliminate the OS&D clerk position was not implemented until Gordon returned from medical leave. When Gordon returned to work on November 11, 2008, she met with Mallonee and the human resources manager to discuss her termination, effective that day. Gordon's duties were absorbed by McDaniel until McDaniel resigned in July 2009, at which time a former part-time employee took over the OS&D duties.

Gordon filed her workers' compensation claim on December 15, 2008. She did not take any steps toward filing a workers' compensation claim prior to this date and never discussed filing a workers' compensation claim with anyone at FedEx. On July 23, 2009, Gordon filed suit for wrongful termination in state court, alleging that FedEx retaliated against her because she exercised her rights under the Illinois Workers' Compensation Act ("IWCA").[1] FedEx removed the case to federal court. On July 20, 2011, the district court granted summary judgment in favor of FedEx.

## II. ANALYSIS

We review a district court's grant of summary judgment *de novo*, drawing all reasonable inferences and

---

[1] Gordon's complaint also alleged violations of the Family and Medical Leave Act , 29 U.S.C. § 2601 *et seq.*, but Gordon does not contest summary judgment on these claims.

viewing all facts in favor of the non-moving party. *Marr v. Bank of Am., N.A.*, 662 F.3d 963, 966 (7th Cir. 2011). Summary judgment is appropriate only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). To survive summary judgment, the non-moving party must establish some genuine issue for trial such that a reasonable jury could return a verdict in her favor. *Makowski v. SmithAmundsen LLC*, 662 F.3d 818, 822 (7th Cir. 2011) (*quoting Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

"Generally, an at-will employee may be discharged for any reason or for no reason at all." *Roger v. Yellow Freight Sys., Inc.*, 21 F.3d 146, 149 (7th Cir. 1994). In Illinois, however, it is unlawful to terminate an employee in retaliation for exercising her rights under the IWCA. *See Palmateer v. Int'l Harvester Co.*, 421 N.E.2d 876, 878-79 (Ill. 1981) (*citing Kelsay v. Motorola, Inc.*, 384 N.E.2d 353 (Ill. 1978)). To maintain a claim for retaliatory discharge, an employee must prove: "(1) his status as an employee of the defendant before injury; (2) his exercise of a right granted by the Workers' Compensation Act; and (3) a causal relationship between his discharge and the exercise of his right." *Roger*, 21 F.3d at 149. FedEx does not dispute that it terminated Gordon's employment and that she was an employee before her injury. Thus, the only issues are whether Gordon can establish that she exercised a right guaranteed by the IWCA and that a causal relationship exists between her exercise of this right and her termination.

*A. Exercise of a Right*

Illinois law recognizes several ways in which an employee may exercise a right under the IWCA. First, an employee may file a workers' compensation claim. *See Kelsay*, 384 N.E.2d at 356. Here, although Gordon eventually filed a workers' compensation claim, and thus exercised a right under the IWCA, she did not file her claim prior to her termination. Therefore, despite deposition testimony to the contrary, the *filing* of her claim could not have been the cause of her termination and this exercise of a right does not logically support her retaliatory discharge cause of action.

But even if there has been no filing of a claim, Illinois courts recognize that the limited tort of retaliatory discharge may apply where a plaintiff is preemptively fired to prevent such a filing. *See Richardson v. Ill. Bell Tel. Co.*, 510 N.E.2d 134, 136-37 (Ill. App. Ct. 1987). "Factual support that the employer was informed or in some way found out about the plaintiff's intent to pursue relief under the Act is essential to a retaliatory discharge action." *Roger*, 21 F.3d at 149-50. The district court held that Gordon did not meet this burden because, at the time FedEx made the decision to terminate Gordon, no one knew the extent of her injuries and Gordon expected to be back to work within a day or two. In addition, Gordon never expressed an intent to file a workers' compensation claim and had not filed one previously. Although the district court relied on these facts in granting summary judgment in favor of FedEx, we need not address this issue further

because Gordon's claim clearly satisfies a third approach recognized by Illinois courts.

Under this third approach, an employee exercises a right under the IWCA merely by requesting and seeking medical attention. *See Hinthorn v. Roland's of Bloomington, Inc.*, 519 N.E.2d 909 (Ill. 1988). In *Hinthorn*, the Illinois Supreme Court held that "the overriding purpose of the [IWCA] is to protect injured employees by ensuring the availability of medical treatment, by shifting the financial burden of such treatment to the employer." *Id.* at 913. "Requesting and seeking medical attention . . . is only the crucial first step in exercising rights under the Workers' Compensation Act." *Id.* Thus, an employee who was told to seek other employment after she informed the vice president of the company of her back injury and intent to seek medical attention had a claim for retaliatory discharge. *Id.* at 910-13.

After Gordon sustained her injury, she reported to First and requested to go to the hospital. The following day, Gordon called the service center and informed Mallonee that she would be seeking additional medical attention from her family doctor. In light of these facts, First and Mallonee were surely aware that Gordon was actively requesting and seeking medical attention. Under *Hinthorn*, Gordon has met her burden of demonstrating the exercise of a right under the IWCA. Accordingly, we must determine whether Gordon can establish a causal relationship between her protected activity and termination.

*B.  Causal Relationship*

In resolving retaliatory discharge claims, Illinois does not apply the *McDonnell Douglas* burden-shifting framework commonly applied in federal retaliation cases. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); *O'Leary v. Accretive Health, Inc.*, 657 F.3d 625, 630-31 (7th Cir. 2011). Instead, to establish a causal relationship, Gordon "must affirmatively show that the discharge was primarily in retaliation for [her] exercise of a protected right." *Roger*, 21 F.3d at 149. To do so, Gordon must "proffer[] sufficient evidence from which a reasonable jury could infer that the employer was improperly motivated." *Id.* Only after Gordon has met this burden is FedEx required to provide a legitimate reason for its decision to terminate her. *See id.* "[T]he ultimate issue to be decided is the employer's motive in discharging the employee." *Hartlein v. Ill. Power Co.*, 601 N.E.2d 720, 730 (Ill. 1992).

Gordon puts forth the following evidence for finding a causal link between her termination and her right to seek medical attention: (1) the plan prior to Gordon's injury was to eliminate a supervisor position; (2) the day after her injury, First and Mallonee changed the plan to eliminate Gordon's position instead; and (3) despite "eliminating" Gordon's position, her duties were passed on to a supervisor and later to a part-time employee who took over Gordon's prior position. Gordon asserts that we should also consider the temporal proximity of the events in question.

Gordon's assertion that, prior to her injury, the plan was to eliminate a supervisor position is based on a

rumor she heard from McDaniel. McDaniel acknowledges that she heard this rumor from someone outside the East Moline facility and she could not remember who gave her the information. She further stated in her deposition that "I don't know that they knew that for a fact. They just told me that that's what they were told." (McDaniel Dep. at 28.) FedEx argues that this alleged "rumor" is inadmissible hearsay, and we agree. Under the Federal Rules of Evidence, hearsay is defined as an out-of-court statement offered by a party "to prove the truth of the matter asserted." Fed. R. Evid. 801(c)(2). Such statements, unless they satisfy one of the many exceptions to the rule, are inadmissible at trial and may not be used to create a genuine issue of material fact at the summary judgment stage. *See* Fed. R. Evid. 802; *Carlisle v. Deere & Co.*, 576 F.3d 649, 655 (7th Cir. 2009). Here, because the rumor is being offered for the truth of the matter asserted and does not meet one of the hearsay exceptions, it is inadmissible. Accordingly, Gordon cannot rely on this evidence in arguing that the original plan was to terminate a supervisor position and that this plan changed following her injury.

Gordon's strongest argument is that a jury could infer an improper motive given the short time span between her injury and FedEx's decision to eliminate her position. Temporal proximity often serves as an "important evidentiary ally of the plaintiff." *Davis v. Time Warner Cable of Se. Wis., L.P.*, 651 F.3d 664, 675 (7th Cir. 2011). But temporal proximity alone is generally not enough to create a genuine issue of material fact. *See Silverman v. Bd. of Educ. of Chicago*, 637 F.3d 729, 736 (7th Cir. 2011);

*Roger*, 21 F.3d at 149 ("The causality requirement calls for more than a sequential connection."). In this case, Gordon fell and sought medical treatment just one day prior to First and Mallonee's decision to eliminate her position. This fact is certainly favorable to Gordon's case but, on its own, is not enough for a jury to infer that FedEx was improperly motivated.

Gordon's final allegation of improper motivation rests on the fact that her OS&D duties were not eliminated but absorbed by another employee. Gordon likens her case to mini-reduction-in-force cases, which require a plaintiff to demonstrate that "(1) she is a member of a protected class, (2) she was performing her job satisfactorily, (3) she suffered a materially adverse employment action, and (4) her job duties were absorbed by employees who were not members of her protected class." *Johal v. Little Lady Foods, Inc.*, 434 F.3d 943, 946 (7th Cir. 2006); *accord Petts v. Rockledge Furniture LLC*, 534 F.3d 715, 725 (7th Cir. 2008). The burden then shifts to the employer to provide legitimate, nondiscriminatory reasons for its actions, and the plaintiff may attempt to show that such reasons are pretextual. *Johal*, 434 F.3d at 946. Gordon acknowledges that the burden-shifting framework applied in mini-reduction-in-force cases does not apply here, but believes such cases may be instructive.

But even in light of such cases, FedEx has presented legitimate, nondiscriminatory reasons for its actions. It is undisputed that FedEx was implementing staff reductions nationwide throughout its facilities. At the

East Moline facility, FedEx management had to eliminate a full-time position. FedEx never stated that it eliminated Gordon's position because her job duties were no longer necessary; rather, FedEx had to eliminate an employee position as a cost-cutting measure. Not wanting to reduce the number of supervisors at the facility, and believing McDaniel could handle OS&D duties in conjunction with her own responsibilities, FedEx eliminated the only full-time non-supervisory position, which happened to be Gordon's. FedEx has presented a "valid basis, which is not pretextual, for discharging [Gordon]." *Hartlein*, 601 N.E.2d at 728. Under Illinois law, this is enough to defeat Gordon's claim. Accordingly, the district court did not err in finding that Gordon did not present a genuine issue of material fact for trial.

## III.  CONCLUSION

For the foregoing reasons, we AFFIRM the judgment of the district court.