In the

# United States Court of Appeals

## For the Seventh Circuit

———————————

No. 21-2601

JAMES L. PEREZ,

*Plaintiff-Appellant,*

*v.*

STAPLES CONTRACT & COMMERCIAL LLC,

*Defendant-Appellee.*

———————————

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 16-cv-07481 — **Robert M. Dow, Jr.**, *Judge.*

———————————

ARGUED FEBRUARY 15, 2022 — DECIDED APRIL 14, 2022

———————————

Before WOOD, HAMILTON, and BRENNAN, *Circuit Judges.*

BRENNAN, *Circuit Judge.* A sales representative failed to meet the requirements of his employer's plan to address his deficient performance, so he was fired. He believes his employer retaliated against him because he served on a jury and refused to participate in his company's sale of a product banned in another state. Because the district court correctly granted summary judgment to the employer, concluding that the sales representative was terminated not in retaliation for

protected activities but because of his poor sales production, we affirm.

## I. Background

### A. Factual Background[1]

James Perez of Elmhurst, Illinois, began work at Staples as a national trainer in 2011. He held that position for four years until he became a sales representative in January 2015. His supervisor was Fred Coha, an area sales manager.

Perez's documented performance issues began five months later. Coha told Perez that his year-to-year sales growth did not meet the company's expectations. Coha placed Perez on a "weekly activity plan" to increase his sales. Perez was informed that "additional steps may be taken" if his sales results did not improve in 90 days. Six months later Perez was still not meeting the company's objectives, so Coha placed him on another weekly activity plan. Perez again received an admonition that if his sales did not improve further steps may be taken. Coha and Perez met weekly to discuss Perez's work performance through December 2015.

The following year Staples introduced a program to increase sales. Under the program, sales representatives were divided into two roles: account managers, who targeted repeat local business, and account developers, who targeted larger, multiple-location accounts with higher dollar amounts. Perez was classified as an account manager, as was co-worker Julie Claver.

---

[1] We present the facts in the light most favorable to Perez, drawing all inferences in his favor. *Mahran v. Advocate Christ Med. Ctr.*, 12 F.4th 708, 712 (7th Cir. 2021).

The program went into effect in March 2016. Shortly before that Coha reassigned an account valued at $70,000 from Perez to another employee. A few weeks later, Coha transferred another account away from Perez to Claver. Perez's job performance continued to falter, so Coha placed Perez on an "associate success plan." Coha emailed the draft plan to his supervisor, Doug Watson, as well as to Jamie Faber in human resources, for their review. Coha also sent Perez the plan with a start date of March 7, 2016, and an end date of June 6, 2016. Perez and Coha met and signed the plan on March 11, 2016.

The associate success plan stated that Perez's performance continued to fall below expectations. To make the necessary improvements, Perez was to meet three minimum plan requirements: (1) close $75,000 in SalesForce.com "wins" per 30-day period, (2) make five selling appointments per week (one of which was to be a first meeting), and (3) maintain $1,000,000 in his SalesForce.com pipeline and make sales growth of $63,462 per period. While the associate success plan was in effect, Coha met with Perez, regularly and one-on-one, to monitor his performance and to assist him in meeting these expectations.

Over the course of the plan, Coha reviewed Perez's numbers and determined that he was not meeting its minimum requirements. First, Perez closed $48,000 in SalesForce.com wins in March, $75,000 in April, and $25,000 in May. (Perez disputes these figures, relying on a chart he created—more on that chart later). Second, Perez's sales pipeline was consistently at or about $330,000, although Perez contends the average amount was $354,420. While Perez was on the associate success plan, Coha emailed Watson about his team's potential hiring needs. Coha acknowledged that Perez's performance

could lead to Perez losing his job, stating "there is a good chance he does not make the cut."

In early 2016, Perez worked on a Staples account with X-Sport Fitness that involved the sale of laundry detergent in New York. A supplier recommended a product called "Clax Mild Forte." That supplier later informed Coha and others that sale of that detergent in the state of New York was prohibited due to its chemical makeup. Perez set up a conference call with Coha and others to discuss substituting a different product for Clax Mild Forte.

According to Perez, he told Coha that he did "not feel comfortable knowingly selling an illegal detergent to the state of New York." Perez says Coha became angry and responded he would "take care of it." The same day, an X-Sport Fitness representative sent an email, confirming receipt of a shipment of Clax Mild Forte, which Perez reviewed. Perez did not respond to the email, understanding that Coha was handling the issue. Coha never discussed this detergent issue again with Perez, and Perez never reported it to Staples's human resources department or ethics hotline.

In spring 2016, after the plan commenced, Perez was summoned for jury service in Illinois state court. He informed Coha about his upcoming jury duty about three weeks beforehand.[2] In response, Perez says Coha had a "funny" facial reaction, shrugged his shoulders, and said only "okay." Perez

---

[2] According to Perez, he shared the jury summons with Coha "[u]pon receiving" it, which was three weeks prior to when his jury service began on May 10, 2016. That suggests Perez informed Coha of his upcoming jury duty in mid-April or later, at which point Perez would have been subject to the associate success plan for more than a month.

later reminded Coha of his upcoming jury service, and Coha asked Perez if he could "get out of it." Perez responded he could not. From May 10–13, 2016, Perez served as the foreperson on a jury in a criminal case in DuPage County Circuit Court.

During the associate success plan period, Coha kept his supervisor Watson informed about Perez's performance. Coha emailed Watson updated figures in early June 2016 which showed that Perez was not in compliance with the plan. Coha also sent this information to Faber in human resources. Watson consulted with his supervisor about Perez's expected termination. The next day, June 10, 2016, Coha met with Perez and Faber, and they informed Perez that his employment with Staples was at its end.

### B. Procedural History

One week later, Perez sued Staples in Illinois state court, alleging violations of the Illinois Jury Act and the Illinois Whistleblower Act, as well as common-law retaliatory discharge based on those statutes. Staples removed the case to the United States District Court for the Northern District of Illinois. Perez did not move to remand the case to state court under 28 U.S.C. § 1447(c).

During litigation the parties engaged in several discovery disputes. Among these, Perez alleged Staples withheld responsive documents from the laptop computer he used when he worked there. Perez also asked the district court to bar Staples from claiming he ever failed to comply with the associate success plan. In the alternative, Perez requested that Staples be ordered to produce his work laptop for inspection. The magistrate judge denied the motions, and Perez did not

appeal those decisions to the district judge under Federal Rule of Civil Procedure 72.

Staples then moved for summary judgment. Before deciding the motion, the district court resolved certain evidentiary issues. Perez relied heavily on his own affidavit to contest certain facts, but the court disregarded two statements in Perez's affidavit as contradicted by his deposition. These concerned Perez's jury service extending the term of his associate success plan, and Perez telling Coha that Perez refused to participate in the sale of Clax Mild Forte detergent.

The district court also considered a sales chart Perez created which was marked Ex. 31 to his affidavit. The court doubted there was sufficient foundation to admit the chart into evidence but considered it for purposes of the dispositive motion. The court did not accept Perez's argument that adverse inferences should be drawn from his lack of opportunity to inspect the laptop. To the court, Perez had failed to establish a basis for his claim that Staples had engaged in misconduct, and the proper time to resolve discovery disputes had passed. The court stated, "not all the exhibits relied upon by the parties were filed, and the Court did not consider facts dependent on those missing exhibits."

On the merits, the district court first addressed Perez's jury-duty claims. As to whether Perez's time as a juror caused his termination, the court applied a less demanding standard that Perez requested—the jury service was "a proximate cause" of the termination[3]—rather than the more stringent benchmark that Staples wanted—"discharge was primarily in

---

[3] Perez relied on Illinois Pattern Jury Instructions 250.01 and 250.02.

retaliation for" his jury service.[4] Even under the lesser stand-ard, the court concluded that there was insufficient evidence of causation because Perez had failed to meet the minimum requirements of the associate success plan. The court also found that Perez's comparisons between himself and the other account manager on his team, Claver, were irrelevant and did not support his claims.

Turning to Perez's whistleblower claims, the district court ruled that the regulation prohibiting the sale in New York of products containing more than a trace quantity of the chemi-cal in Clax Mild Forte did not trigger an Illinois retaliatory discharge claim. Rather, such a claim arises only when a "clearly established policy of Illinois" is at issue. The court found no genuine issue of material fact as to whether Perez had participated in any protected activity under the Illinois Whistleblower Act either, as well as insufficient evidence of retaliatory motive to defeat summary judgment. The district court entered summary judgment for Staples on all counts.

Perez then moved to alter or amend the judgment under Federal Rule of Civil Procedure 59(e). He contended the court had failed to consider all the evidence. The court took that motion under advisement, and Perez then clarified that he was seeking to supplement his summary judgment response to include interactive spreadsheets and the last ten "sub-ex-hibits" to his affidavit, which he had inadvertently omitted. Staples opposed this motion as an improper request for recon-sideration based on Perez's own inexcusable neglect. The

---

[4] Staples relied on *Gordon v. FedEx Freight, Inc.*, 674 F.3d 769, 774 (7th Cir. 2012) (citing *Roger v. Yellow Freight Sys., Inc.,* 21 F.3d 146, 149 (7th Cir. 1994)).

district court partially granted Perez's motion to supplement the record and permitted Perez to file the interactive spreadsheets. The court found no explanation for Perez's previous failure to file the ten "sub-exhibits" to his affidavit, and no compelling reason to permit him to do so. Still, the court noted that Staples filed and cited many of these documents, so the court had considered them.

Perez's motion to alter or amend the judgment was denied, as the court concluded "the additional spreadsheets would not have changed" the analysis. To the court, Perez's attempt to compare his performance to other Staples employees improperly conflated growth rates and sales numbers. The newly filed exhibits did not support Perez's assertions, and he had forfeited several arguments when he raised them for the first time in his reply brief.

The district court did reverse course on one issue—the application of the sham-affidavit rule to the portion of Perez's affidavit dealing with his purported objections to the sale of Clax Mild Forte in New York. On further consideration, the court agreed with Perez: "It is possible that [Perez] told Coha both that he was worried about his potential individual liability and that he was refusing to participate in the sale of Clax Mild Forte." So, the court no longer disregarded the statement in Perez's affidavit that he told Coha he refused to participate in the detergent sale.

The district court stood by its earlier analysis of Perez's whistleblower claims, which had suggested that an allegation of retaliatory discharge under Illinois law likely could not be predicated "on a New York environmental law that protects New York citizens." In this later review, the court interpreted the term "State" in the Illinois Whistleblower Act to mean

"Illinois," so Perez could not "make out a claim based on refusing to participate in a violation of New York law." Staples remained entitled to summary judgment, and this appeal followed.

## II. Jurisdiction

Perez first challenges subject matter jurisdiction, which can be contested at any time. *Perez v. K&B Transp., Inc.*, 967 F.3d 651, 654 (7th Cir. 2020). He makes a circuitous and ultimately incorrect argument that the district court lacked diversity jurisdiction and therefore it could not have entered summary judgment against him.

Perez, domiciled in Illinois, sued Staples Contract & Commercial, Inc., a citizen of two states—it was incorporated in Delaware, and its principal place of business is in Massachusetts. Complete diversity of the parties existed, and more than $75,000 was in dispute. 28 U.S.C. § 1332(a); *Schur v. L.A. Weight Loss Ctrs., Inc.*, 577 F.3d 752, 758 (7th Cir. 2009). The defendant removed the case to federal court, and Perez did not move to remand it to Illinois state court.

Staples, Inc. has a business-to-business arm, Staples Contract & Commercial LLC, which sells and delivers office, technology, and other products and services to various companies, from small businesses up to Fortune 500 corporations. Staples Contract & Commercial *LLC* then filed a new corporate disclosure statement in the district court, asserting it—not Staples Contract & Commercial, *Inc.*—is the proper defendant in this case, as well as that the limited liability company is wholly owned by its only member, Staples, Inc. The limited liability company moved to amend the caption to replace the incorporated entity. In support, the limited liability

company filed a declaration from Staples, Inc.'s chief legal officer that Staples Contract & Commercial LLC had the same assets and liabilities as Staples Contract & Commercial, Inc. The district court granted the motion and amended the caption.

Despite Perez's arguments to the contrary, the amendment of the case caption had no effect on the existence of diversity jurisdiction. Nothing changed to alter the complete diversity of the parties. A limited liability company carries the citizenship of "each of its members," *Wise v. Wachovia Sec., LLC*, 450 F.3d 265, 267 (7th Cir. 2006), and the sole member of Staples Contract & Commercial LLC is Staples, Inc., which is also incorporated in Delaware and also has its principal place of business in Massachusetts. Perez never challenges the representation that Staples Contract & Commercial LLC has Staples Inc. as its sole member. So, Perez has never contended that any defendant was not completely diverse so as to "destroy federal jurisdiction." *Schwartz v. State Farm Mut. Auto Ins. Co.*, 174 F.3d 875, 877 (7th Cir. 1999).

Moreover, "the well-established rule [is] that diversity of citizenship is assessed at the time the action is filed. We have consistently held that if jurisdiction exists at the time an action is commenced, such jurisdiction may not be divested by subsequent events." *Freeport-McMoRan, Inc. v. K N Energy, Inc.*, 498 U.S. 426, 428 (1991); *see also Hukic v. Aurora Loan Servs.*, 588 F.3d 420, 427 (7th Cir. 2009) (citing *Grupo Dataflux v. Atlas Global Grp., L.P.*, 541 U.S. 567 (2004)). When a case is removed from state to federal court, "the time-of-filing rule means that we analyze our jurisdiction at the time of removal, as that is when the case first appears in federal court." *Hukic*, 588 F.3d at 427.

The record is unclear as to whether Staples should have moved to substitute a party under Federal Rule of Civil Procedure 25(c) rather than to amend the case caption. Regardless, its choice had no effect on federal jurisdiction in this case. Diversity jurisdiction existed when this case was removed to federal court—and does so now—so Perez's jurisdictional contest fails.

### III. Evidentiary Issues

Perez next contests the contours of the evidence the district court considered when it granted Staples summary judgment. Specifically, Perez argues the district court should have:

- reviewed a summary chart he created, Exhibit 31, which he calls his primary proof that he met the associate success plan criteria for monthly sales;

- drawn an adverse inference from Staples's failure to produce his laptop in discovery;

- considered the last ten sub-exhibits to his affidavit; and

- considered one statement in his affidavit rather than disregarded it under the sham-affidavit rule.

Abuse of discretion is the standard of review for each of these challenges: as to the admissibility of evidence, *James v. Hale*, 959 F.3d 307, 314 (7th Cir. 2020); on Perez's motion to supplement the record to include the sub-exhibits, *Haynes v. Indiana Univ.*, 902 F.3d 724, 730, 733 (7th Cir. 2018); and on his motion to alter or amend the judgment under Rule 59(e). *Matter of Prince*, 85 F.3d 314, 324 (7th Cir. 1996).

*The summary chart—Exhibit 31*. Perez says this chart shows that he closed $115,000 worth of wins in March 2016, $75,000

in April 2016, and $90,000 in May 2016. (Recall, the associate success plan required him to close at least $75,000 in wins per 30-day period.) But the chart did not have an adequate evidentiary foundation.[5] Regardless, the district court considered Exhibit 31, but found that "even assuming that [Perez]'s chart is accurate and therefore admissible, it does not establish that he met the [associate success plan]'s first requirement." Perez does not contest this conclusion on appeal. Because the district court expressly considered Perez's self-created chart, it could not have abused its discretion as Perez claims.

*The laptop computer.* Perez asserts the district court erred by declining to sanction Staples with an adverse inference because it failed to produce Perez's work laptop, which was allegedly destroyed or lost. He does not identify any information on the missing laptop that would have been important to his case, but he says it would have included his notes that would corroborate his testimony. Staples responds there is no evidence of spoliation.

The district court correctly concluded that these circumstances did not warrant an adverse inference. Perez has not

---

[5] The supposed foundation for Exhibit 31 is an Exhibit Y, an interactive spreadsheet that Perez ultimately filed on a flash drive with the district court after summary judgment was entered for Staples. In Exhibit Y, when one selects the orders listed as "Closed Won / Implemented," it shows some of the numbers Perez suggests (or in one case a slightly higher figure). But Perez fails to explain how a court—or a jury—could verify that he closed each of the sales he attributes to himself. And Exhibit Y shows only $25,000 in closed sales for May 2016; only by including sales that do not appear on his own Exhibit Y can Perez arrive at the figures in Exhibit 31. So, Exhibit 31 is not admissible, and the district court was not required to give it weight.

shown that Staples destroyed any information, much less that such information was intentionally destroyed in bad faith. *See Norman-Nunnery v. Madison Area Tech. Coll.*, 625 F.3d 422, 428-29 (7th Cir. 2010). Further, Perez should have addressed the question of the laptop during discovery. Perez failed to appeal the magistrate judge's ruling denying his motion to compel production of the laptop to the district judge. A party aggrieved by a magistrate judge's discovery-related order must appeal to the district judge under 28 U.S.C. § 636(b) and Federal Rule of Civil Procedure 72. The district judge then reviews that order under the deferential clear-error standard. *Hall v. Norfolk Southern Ry. Co.*, 469 F.3d 590, 594–95 (7th Cir. 2006). Perez failed to file an objection to the magistrate judge's order with the district judge, so he has waived his right to object on appeal. *Hunt v. DaVita, Inc.*, 680 F.3d 775, 780 n.1 (7th Cir. 2012).

*The ten sub-exhibits.* Perez contends the district court abused its discretion by failing to consider ten sub-exhibits to his affidavit. Perez admits he failed to file these items, but he argues good cause exists for this failure because his attorney's legal assistant "inexplicably and inadvertently neglected to file [them]." Staples responds the court was correct not to consider the sub-exhibits. Perez's explanation was inadequate, and an effort to supplement the record after summary judgment may properly be denied where the information was available at the time the motion was heard and no reasonable explanation is offered for why it was not submitted. *See Moro v. Shell Oil Co.*, 91 F.3d 872, 876 (7th Cir. 1996).

Staples has the better of this argument. "Motions to alter or amend judgments are no place to start giving evidence that could have been presented earlier." *Dal Pozzo v. Basic Mach.*

*Co.*, 463 F.3d 609, 615 (7th Cir. 2006). A district court does not abuse its discretion when it declines to recognize a filing error as good cause to excuse late submissions of documents. And importantly, the district court stated, "many of these documents were filed and cited by [Staples] and therefore considered by the [c]ourt."

Even more, it is difficult to discern what Perez would like the court to infer from the 10 sub-exhibits. Most are emails that Coha sent or received, largely confirming Staples's position that Perez's performance under the associate success plan was deficient. That explains why Staples cited many of the documents that Perez now says should have been admitted. Given Perez's weak rationale for failing to timely file the sub-exhibits, and that the district court considered many of them, the trial court did not abuse its discretion.

*Perez's statements and the sham-affidavit rule.* "In this circuit the sham-affidavit rule prohibits a party from submitting an affidavit that contradicts the party's prior deposition or other sworn testimony." *James v. Hale*, 959 F.3d at 316. The goal of the rule is to preclude the manipulation of testimony to avoid an adverse summary-judgment ruling. *See id*. at 315–16. "[W]e have recognized three exceptions to the sham-affidavit rule." *Id*. at 317. "An affidavit that contradicts prior testimony but contains newly discovered evidence is allowed," as is "a statement in a deposition if the statement is demonstrably mistaken." *Id*. (citations omitted). "We also allow the submission of a supplemental affidavit that clarifies ambiguous or confusing deposition testimony." *Id*. (citation omitted).

The district court found that Perez's deposition testimony contradicted two statements in his affidavit, and no exception to the sham-affidavit rule applied, so under that rule the court

disregarded those statements. As to one of the averments—
that Perez refused to participate in the sale of Clax Mild Forte
in New York—the court reviewed Perez's Rule 59(e) motion
and his motion to supplement the record and reversed itself,
deciding to consider the statement. So, Perez was successful
in getting the district court to change its position on this state-
ment in his favor.

The other excluded statement was that Coha told Perez his
jury duty would not be considered when evaluating his per-
formance under the associate success plan. At his deposition
Perez was asked whether it was possible that Coha told Perez
that his jury service "translated into [Staples] giving you an
additional four days on the [associate success plan]." Perez
responded, "[i]t is possible." In Perez's affidavit, he attested
that "[n]ever did anyone at Staples ever tell me that they were
extending my [associate success plan] because of my jury ser-
vice … [w]hen I expressed that Staples should factor in my
jury service when evaluating my performance Mr. Coha told
me[,] 'that doesn't matter.'"

Perez has not "demonstrated that the relevant deposition
statements were mistaken," and he has not come forward
with "newly discovered evidence." *Id.* at 317. Rather, he
strongly contests that the statement from his affidavit directly
conflicts with his deposition testimony on the relevant point.

Irrespective of whether Perez's statements at his deposi-
tion and in his affidavit are inherently inconsistent, the exclu-
sion of this particular affidavit statement from the summary
judgment record was harmless error. *Id.* at 317–18 (recogniz-
ing failure to consider summary-judgment affidavit as harm-
less error). As described below, even if he had four additional
workdays Perez could not have satisfied certain requirements

of the associate success plan. For example, even with additional time he could not have retroactively met the condition of making five meetings per week. And there is no conceivable way Perez could have met the $1,000,000 required minimum in his SalesForce.com pipeline. Perez's claims therefore fail unrelated to the length of his associate success plan, including whether that period was extended due to his jury service. The allegedly contradictory factual assertion "add[s] nothing of importance." *Id*. at 317. While the statement in the affidavit perhaps should not have been excluded, "it does not change anything." *Id*. at 318.

## IV. Summary Judgment

Staples was granted summary judgment on Perez's retaliation claims, under both Illinois statutory and common law, related to jury service and whistleblowing. Because this case is before us under diversity jurisdiction, state substantive law applies—here, that of Illinois. *Waldon v. Wal-Mart Stores, Inc. Store Number 1655*, 943 F.3d 818, 821 (7th Cir. 2019).

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Federal Rule of Civil Procedure 56(a). This court may affirm the grant of summary judgment on any basis that is apparent from our review of the record. *Skyrise Constr. Grp., LLC v. Annex Constr., LLC*, 956 F.3d 950, 956 (7th Cir. 2020); *Williams v. Shah*, 927 F.3d 476, 480 (7th Cir. 2019).

We review the district court's grant of summary judgment to Staples de novo, construing facts in the light most favorable to Perez and drawing all reasonable inferences in his favor. *Khungar v. Access Cmty. Health Network*, 985 F.3d 565, 572 (7th

Cir. 2021). "An inference is not reasonable if it is directly contradicted by direct evidence provided at the summary judgment stage, nor is a 'conceivable' inference necessarily reasonable at summary judgment." *MAO-MSO Recovery II, LLC v. State Farm Mut. Auto. Ins. Co.*, 994 F.3d 869, 876 (7th Cir. 2021) (citing *Cont'l Cas. Co. v. Nw. Nat. Ins. Co.*, 427 F.3d 1038, 1041 (7th Cir. 2005)).

We consider first Perez's claim under the Illinois Jury Act and his common-law retaliatory discharge claim based on that statute. Then, we evaluate his Illinois Whistleblower Act claim and his retaliatory discharge contention predicated on that law.

### A. Jury-Service Retaliation Claims

Under the Illinois Jury Act, "[n]o employer shall discharge, threaten to discharge, intimidate or coerce any employee by reason of the employee's jury service, or the attendance or scheduled attendance in connection with such service," in any Illinois court. 705 ILL. COMP. STAT. ANN. 305/4.1(b). Case law interpreting this Act is sparse.

Perez has also brought a common-law retaliatory discharge claim based on this Act. A former employee bringing a common-law claim for retaliatory discharge must show: "(1) the employer discharged the employee, (2) in retaliation for the employee's activities, and (3) that the discharge violates a clear mandate of public policy." *Turner v. Mem'l Med. Ctr.*, 911 N.E.2d 369, 374 (Ill. 2009). "Illinois does not apply the *McDonnell Douglas* burden-shifting framework commonly applied in federal retaliation cases." *Gordon v. FedEx Freight, Inc.*, 674 F.3d 769, 774 (7th Cir. 2012). Instead, a plaintiff must first "proffer[] sufficient evidence from which a reasonable jury

could infer that the employer was improperly motivated" before the employer is required to provide a legitimate reason for the termination. *Id.*

The parties do not dispute that Staples terminated Perez's employment, and that jury service is a matter of public policy. The only element in dispute on either of Perez's jury-duty claims is whether Perez's four days of jury service caused his termination. Like the district court, we assume without deciding that the jury service must be "a proximate cause" of the termination. *See* ILLINOIS PATTERN JURY INSTRUCTIONS 250.01 and 250.02. If there is no genuine issue of material fact that Staples had a valid, non-pretextual basis for discharging him, then summary judgment was properly entered for the company. *Gordon*, 674 F.3d at 775.

We consider Perez's arguments for why the protected activity of his jury service was a proximate cause of his discharge. In doing so, first we evaluate the affirmative evidence that Perez relies on for his belief that Staples actually fired him because of his jury service.

### 1. Perez's notice to Coha of jury duty

In attempting to show a genuine issue of material fact as to causation, Perez cites what he terms "Coha's overt hostility toward [Perez's] jury duty." The district court concluded that this evidence did not give rise to an inference that Staples's termination of Perez's employment was driven by his jury service. Perez characterizes as "hostile" Coha's allegedly "funny" facial reaction to being informed that while Perez was on the plan he had been selected for jury duty, and Coha's inquiry as to whether Perez could "get out of it." But Perez fails to cite case law or to develop his argument. No

reasonable jury could conclude from Coha's facial reaction and comments that Staples fired Perez because of his jury service.

### 2. The associate success plan's end date

By its terms, the associate success plan started on March 7, 2016 and ended June 6, 2016. Perez was terminated four days later, June 10, 2016. Perez contends Staples failed to extend the plan to account for his jury service.

According to Perez, the district court erred by concluding that the plan was extended to accommodate his jury service. But the undisputed evidence shows that he was terminated four days after the plan's scheduled end date, the same number of days that he served as a juror.

Perez also maintains that the district court erred by not finding that Staples should have extended the plan by the number of holidays and vacation days he took during the plan's term. Yet, the district court correctly concluded that even if Staples had that requirement, no evidence existed that the company's deviation from it related to Perez's jury service. And the court found that Perez knew when he entered into the plan that he had scheduled vacation during its term, and he was aware of the difficulty his scheduled time off could cause. So, Perez could have asked that the plan's end date be adjusted accordingly, but he did not.

Perez offers another argument—that Staples began the process to terminate him before the plan ended, as evidenced by Coha's June 2–3, 2016 emails to his superior Watson that Perez was falling short of the associate success plan's requirements. This contention also fails, though, as Coha's report was based only on Perez's performance under the plan, and he did

not ask for permission to fire Perez. Coha's actions did not amount to a termination before the end of the plan, and the district court correctly rejected Perez's assertion that Staples retaliated against him before the end of the plan.

### 3. Comparison to Perez's coworker Claver

Perez compares his performance to that of his fellow account manager Julie Claver, arguing that his results were superior to hers. To Perez, this showed that Staples's reliance on his production under the associate success plan was pretextual. But, as discussed above, the *McDonnell Douglas* burden-shifting framework does not apply to retaliatory-discharge claims under Illinois law. *See Gordon*, 674 F.3d at 774. And the district court noted that Perez conceded the point that comparisons to similarly-situated employees are not relevant on a common-law claim for retaliatory discharge. Perez failed to dispute the district court's conclusion in the portions of his opening brief on appeal that compare his performance to that of Claver, so he has waived the argument.

In any event, Perez's comparisons to Claver do not create a genuine dispute of material fact regarding pretext. "Similarly situated employees must be directly comparable to the plaintiff in all material respects" such that any "other possible explanatory variables" are eliminated. *Formella v. Brennan*, 817 F.3d 503, 512 (7th Cir. 2016) (citation omitted). Perez has not made that showing as to Claver, so she cannot be considered a similarly-situated employee. Moreover, as the district court correctly reasoned, the sales growth rates of Perez and Claver do not establish the relationship between each employee's overall performance. Comparisons to Claver therefore do not support an inference that Staples acted pretextually in firing Perez.

### 4. Perez's performance during the plan period

Perez also responds to Staples's arguments that his deficient performance under the associate success plan caused the company to fire him. He disputes that he failed to improve his performance during the plan, as he believes he met each of the plan's three requirements. But although we view the evidence in the light most favorable to Perez, he did not satisfy at least two of the three plan requirements.

First, the district court correctly concluded that during the plan period Perez did not close a minimum of $75,000 in Salesforce.com wins per period. Coha reported that Perez closed $48,000 in wins in March, $75,000 in April, and $25,000 in May. In Exhibit 31, discussed earlier, Perez has recalculated those figures as $115,000 in March, $75,000 in April, and $90,000 in May. To reach the May number, Perez includes a $50,000 win for a sale to the Elk Grove Village post office. But the basis for claiming that win is not clear. Initially, Perez says he was not informed about the sales to the Elk Grove Village post office until discovery in this lawsuit commenced. Later, he offered that his first-time sale to that buyer "projected into a yearly opportunity pipeline of $50,000.00." Perez thus effectively concedes the district court properly declined to credit this as a $50,000 win. As a matter of law, then, Perez failed to meet the first requirement.

Second, on the plan's requirement that Perez maintain $1,000,000 in his Salesforce.com pipeline, there is no genuine dispute that he fell well short of the mark. Perez contends Staples improperly adjusted his figures and failed to credit additional accounts toward his pipeline because of a retaliatory motive. But there was an insufficient evidentiary record to

draw either of those inferences. Pipeline credits were properly denied where the opportunity was already won.

Perez contends on appeal that by Staples's criteria, his pipeline averaged $354,420. He claims that $350,000 was the pipeline amount required for an account manager—his position—rendering irrelevant the $1,000,000 requirement in the associate success plan that he signed. Perez's novel argument is that his inadequate performance was a pretext for retaliation because Staples held him to a standard for a position he did not hold. But the undisputed evidence is that Perez agreed to the associate success plan, which had a $1,000,000 pipeline requirement, before the point at which his jury service could have become a consideration. Perez fell short of that expectation, even if all the accounts he claims were improperly excluded were included.

On these facts, no reasonable juror could conclude that Perez's poor performance under the associate success plan was a merely pretextual reason for his termination.

*       *       *

In sum, Perez has not shown a genuine issue of material fact that his jury service was a proximate cause of his termination. The district court did not err in finding no connection between Perez's four days of jury service and the end of his employment with Staples. Summary judgment was therefore proper on Perez's claim under the Illinois Jury Act and his claim for common-law retaliatory discharge based on his jury service.

### B. Whistleblower Retaliation Claims

Perez also claims under the Illinois Whistleblower Act that Staples discharged him in retaliation for his refusal to participate in its sale of Clax Mild Forte laundry detergent to buyers located in New York, which violates a law of that state.

Under the Illinois Whistleblower Act, "[a]n employer may not retaliate against an employee for refusing to participate in an activity that would result in a violation of a State or federal law, rule, or regulation." 740 ILL. COMP. STAT. ANN. 174/20. There are two aspects to such a claim: (1) the refusal to participate; and (2) the violation of a statute, rule, or regulation. *Roberts v. Bd. of Trustees of Cmty. Coll. Dist. No. 508*, 135 N.E.3d 891, 900–01 (Ill. 2019). The parties do not dispute that the detergent's sale in New York violates a New York state environmental regulation.[6] Staples submits that Perez's whistleblower claims do not involve Illinois law, that he did not engage in protected activity, and even if he did, there is no evidence Staples terminated Perez in retaliation for any whistleblowing or refusal to participate in the sale of the detergent.

Perez also brings a common-law retaliatory discharge claim in connection with his purported whistleblowing activity. As described above, such a claim requires the plaintiff to show that "(1) the employer discharged the employee, (2) in retaliation for the employee's activities, and (3) that the discharge violates a clear mandate of public policy." *Turner*, 911

---

[6] N.Y. COMP. CODES R. & REGS. tit. 6, § 659.3(c) ("No household cleansing product containing nitrilotriacetic acid (NTA) in excess of a trace quantity shall be distributed, sold, offered or exposed for sale in this State."). This court can take judicial notice of statutes and regulations. *See Demos v. City of Indianapolis*, 302 F.3d 698, 706 (7th Cir. 2002).

N.E.2d at 374. A public policy "affects the citizens of the State collectively," and a "clearly mandated public policy" is one that "strike[s] at the heart of a citizen's social rights, duties, and responsibilities." *Id*. (quoting *Palmateer v. Int'l Harvester Co.*, 421 N.E.2d 876, 878–79 (Ill. 1981)). "The phrase 'clearly mandated public policy' implies that the policy will be recognizable simply because it is clear." *Id*. at 375.

On appeal Perez argues he engaged in protected activity under the Illinois Whistleblower Act because he did more than complain or question Staples's actions on this front. He "refus[ed] to participate" (as the Act provides) in a protected activity by refusing to condone the sale of the detergent from the date he found out it was illegal in New York.

This argument does not fully engage with the district court's rulings. In deciding Perez's motions filed after summary judgment was entered for Staples, the court reached an issue not decided earlier: whether the New York environmental regulation could form the basis for a claim under the Illinois Whistleblower Act. Specifically, the court considered whether in the Illinois Whistleblower statutory phrase—"a violation of a State or federal law, rule or regulation"—"State" means Illinois or could mean New York.

"[O]ne of the most basic rules of statutory interpretation" is that "identical words used in different parts of the same act are intended to have the same meaning." *Denan v. TransUnion LLC*, 959 F.3d 290, 296 (7th Cir. 2020) (citations omitted). The district court decided that the presumption of consistent usage canon supported Staples's view that "State" means "Illinois." This is because the Illinois Whistleblower Act elsewhere refers to "State college[s] and universit[ies]" and "State agenc[ies]," and the presumption against extraterritorial

effect makes it highly improbable that "State" in those contexts meant "any state in the United States." Perez has failed to dispute or otherwise engage with the district court's sound statutory analysis.

Neither has Perez cast doubt on the district court's conclusion that the New York regulation did not implicate any interest related to "a social duty or responsibility" or the "health and welfare" of Illinois citizens. *Leweling v. Schnadig Corp.*, 657 N.E.2d 1107, 1112 (Ill. App. Ct. 1995). This dooms his common-law claim for retaliatory discharge. Perez focuses on the fact that sales of Clax Mild Forte in New York occurred while certain Staples employees were situated in Illinois. But that underscores that the Illinois legislature apparently has not restricted the sale of Clax Mild Forte and its sale in Illinois is legal.

Perez presses that the New York regulation gives rise to a common-law retaliatory discharge claim because Illinois, like New York, regulates the sale of detergent. But that does not mean that this New York regulation prohibiting the sale of certain cleaning products not prohibited in Illinois constitutes a "clearly mandated public policy" of Illinois. Perez does not explain how he believes the New York regulation "strike[s] at the heart of a citizen's social rights, duties, and responsibilities." *Palmateer*, 421 N.E.2d at 878–79. There is no analog to the New York regulation within the Illinois statutory and regulatory regime. And neither we nor the district court have found authority suggesting that the environmental regulations of other states, when not adopted by Illinois law, can support a common-law retaliatory discharge claim under Illinois law. So, the district court correctly concluded that a plaintiff may

not predicate a common-law retaliatory discharge claim under Illinois law on the New York regulation.

Even if we were to agree with Perez that the New York regulation could theoretically support a claim under the Illinois Whistleblower Act or for common-law retaliatory discharge, there is insufficient evidence to show that Staples acted with a retaliatory motive.

Perez contends there is ample evidence that Staples retaliated against him. The Clax Mild Forte issue arose as the associate success plan was being finalized, and Perez told Coha he was refusing to participate in the illegal sale of the detergent before that plan was signed. Additionally, following the March 2016 discussions on that topic, Staples transferred certain accounts originally assigned to Perez; Coha predicted in an email that Perez would not meet the plan's requirements; and Coha informed human resources about Perez's substandard performance under the plan.

But these facts do not support an inference of a retaliatory motive. The timing of the associate success plan does not show that Staples retaliated because Coha had finalized the plan before the detergent issue arose, and Perez does not claim that Coha changed the plan after learning about the issue. Besides, Perez does not assert that he reported any of these allegedly retaliatory acts to authorities or "higher-ups" at Staples. Most importantly, Perez's "termination was immediately preceded by an intervening event unrelated to [his] complaints"—here, his three-month failure to comply with the plan's requirements. *Reid v. Neighborhood Assistance Corp. of Am.*, 749 F.3d 581, 589 (7th Cir. 2014). This court has consistently held that "a track record of job performance issues prior to the employee's protected activity does not establish

circumstantial evidence in support of a retaliation claim." *Curtis v. Costco Wholesale Corp.*, 807 F.3d 215, 221 (7th Cir. 2015) (collecting cases); *see also Anderson v. Nations Lending Corp.*, 27 F.4th 1300, 1308 (7th Cir. 2022); *Long v. Teachers' Ret. Sys. of Ill.*, 585 F.3d 344, 354 (7th Cir. 2009). That holds true whether the plaintiff brings a statutory or common-law claim. Here, it is undisputed that Staples documented Perez's performance issues dating back to May 2015. When his performance did not improve, Staples placed him first on weekly activity plans, and then on the associate success plan. Given Perez's extensive track record of insufficient production, the district court accurately concluded that Coha's belief about Perez not meeting the plan requirements does not give rise to a reasonable inference that Staples fired Perez because of any whistleblowing activity.

Summary judgment for Staples was proper on Perez's claim under the Illinois Whistleblower Act and his claim for common-law retaliatory discharge based on that Act. The district court's statutory interpretation that the New York regulation cannot support such a claim is correct. Even if it were not, there was insufficient evidence of a retaliatory motive to defeat summary judgment.

\*        \*        \*

For these reasons, we AFFIRM the district court's rulings.